# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CLINTON RUSH,<br><br>Plaintiff,<br><br>vs.<br><br>ADREW D. WIENSTEIN; DONALD HEIDA; and JANET MURAKAMI,<br><br>Defendants. | Case No.: 1:18-cv-00073-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT (Dkt. 55)**<br><br>**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO POST STATE BOND (Dkt. 58)**<br><br>**DFENDANTS' MOTION TO REQUEST COURT TO ORDER EXAMINATION CONCERNING COMPETENCY OF PLAINTIFF (Dkt. 61)**<br><br>**DEFENDANTS' MOTION TO SEAL (Dkt. 62)**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 74)**<br><br>**DEFENDANTS' MOTION TO SEAL (Dkt. 75)** |

Pending before the Court are six motions:  (1) Plaintiff's Motion for Leave to Amend Complaint (Dkt. 55); (2) Defendants' Motion to Dismiss for Failure to Post State Bond (Dkt. 58); (3) Defendants' Motion to Request Court to Order Examination Concerning Competency of Plaintiff (Dkt. 61); (4) Defendants' Motion to Seal (Dkt. 62); (5) Defendants' Motion for Summary Judgment (Dkt. 74); and (6) Defendants' Motion to Seal (Dkt. 75).  Having carefully

**MEMORANDUM DECISION AND ORDER - 1**

considered the record and otherwise being fully advised, the Court enters the following

Memorandum Decision and Order:[1]

## <u>GENERAL BACKGROUND</u>

Plaintiff initiated this action in February 2018, bringing suit against three Idaho state

troopers for actions that occurred before and/or during his arrest.

According to Plaintiff, he was in or beside his car when one of the troopers said he could

leave the area.  *See* Compl., p. 2 (Dkt. 3); *see also* Att. to Compl., p. 1 (Dkt. 3-1).  Another

trooper took Plaintiff's car keys away from him and "said he was calling a different officer."

Att. to Compl., p. 1 (Dkt. 3-1).  Plaintiff then took some pictures of the state trooper and posted

them to Facebook.  *See id.*  Allegedly because of this post, the officer became angry and

approached Plaintiff with a "tire beater."  *Id*.  Plaintiff "took a swing," but after a brief

altercation, he complied with the officer's instructions to lie down.  *See id.*; *see also* Compl., p. 2

(Dkt. 3).  After Plaintiff was down on the ground, the three state troopers allegedly attacked him,

choking Plaintiff and "slam[ming] his head in the ground."  Att. to Compl., p. 1 (Dkt. 3-1); *see*

*also* Compl., p. 2 (Dkt. 3).  According to Plaintiff, one of the state troopers also intentionally

pulled down his pants and sprayed either mace or pepper spray onto his groin area.  *See id.*

From this, Plaintiff asserted claims of "sexual misconduct, excessive force, harassment,

illegal detainment, aid[ing] and abetting agg[ravated] battery," and retaliation – seeking at least

$3 million on monetary damages.  Compl., p. 2 (Dkt. 3); *see also* Am. Compl., p. 1 (Dkt. 7)

(referencing "a bigger monetary claim of $1 million.").[2]

---

[1]  The latter two motions – Defendants' Motion for Summary Judgment (Dkt. 74) and Motion to Seal (Dkt. 75) are not resolved within this Order *on the merits*.  *See infra* (discussing motions' dismissal without prejudice, re-filing protocols, and briefing schedules).

[2]  Also in February 2018, Plaintiff sought to amend his Complaint, asserting a belief that Defendant Wienstein "lied in his testimony in court" and that he "would like to add further

**MEMORANDUM DECISION AND ORDER - 2**

In June 2018, the Court issued an Initial Review Order following its review of Plaintiff's Complaint/Amended Complaint "to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A." IRO, p. 1 (Dkt. 12). At that time, the Court (1) allowed Plaintiff's excessive force and bodily integrity claims against Defendants under the Fourth Amendment; (2) precluded Plaintiff's harassment and false arrest claims;[3] (3) allowed Plaintiff's retaliation claims; and (4) precluded Plaintiff's claims based on state criminal statutes (aggravated battery). *See id*. at pp. 3-8.

Defendants answered Plaintiff's Complaint and Amended Complaint (as modified by the Court's Initial Review Order) on September 24, 2018. *See* Ans. (Dkt. 23). The next day, the Court issued a Scheduling Order which, relevant here, stated that "[a]ll motions to amend pleadings or to join parties shall be filed within **90 days** after entry of this Order [(December 24, 2018)]." Sched. Order, p. 2 (Dkt. 25) (emphasis in original).

Though Plaintiff originally represented himself as an inmate at the Ada County Jail, on February 7, 2019, his current attorney, Nathan M. Olsen, filed a Notice of Appearance. *See* Not. of App. (Dkt. 35). Thereafter, several extensions to the discovery deadline were requested and granted; however, at no time was the deadline to amend the pleadings ever extended. *See* Jnt.

---

accusation to this report for defamation of character and false complaint of a felony." Am. Compl., p. 1 (Dkt. 7); *see also id*. ("I want these officers brought up on charges for agg[ravated] sexual assault with a weapon, agg[ravated] batt[ery], false report of a felony, kidnapping for taking my car keys when I was cleared to leave without any reason as to why . . . and I think Andrew Wienstein needs to be charged with perjury as well because of his testimony under oath.").

[3] The Court understood these claims to allege that the state troopers did not have probable cause to arrest Plaintiff and that such claims were precluded under *Younger v. Harris*, 401 U.S. 37 (1971) and/or *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). *See* IRO, p. 5 (Dkt. 12). Even so, the Court indicated that, "[i]f Plaintiff believes that these claims are not barred by *Younger* or *Heck*, he may move to amend the complaint" and "explain the current status of the charges against him and whether any claims in this action are related to his current incarceration." *Id*. at p. 6.

**MEMORANDUM DECISION AND ORDER - 3**

Mots. to Ext. & Orders (Dkt. Nos. 36-37, 41-42).[4]  Then, on April 8, 2020, Plaintiff filed the at-issue Motion for Leave to Amend Complaint, stating in full:

> Pursuant to [Rule] 15(a) and (d) and Idaho Loc. Civ. R. 15.1, Plaintiff Clinton B. Rush hereby moves this Court for leave to file his Second Amended Complaint, which is attached as Exhibit A.  In that the plaintiff's original complaint and amended complaint were filed *pro se* and in plaintiff's own handwriting, his Second Amended Complaint provided herein is restated and reformatted.  The Second Amended Complaint largely reflects the development of known facts that have come forward since the plaintiff filed his initial complaint, in particular the results of the recent testing of plaintiff's clothing confirming the application of pepper spray directly on his groin.

Mot. for Leave to Am. Compl., p. 1 (Dkt. 55).

On April 24, 2020, Defendants filed the at-issue Motion to Dismiss, arguing that any state claims against the Idaho state troopers must be dismissed for failure to file a statutory bond as required under Idaho law.  *See generally* Mot. to Dismiss (Dkt. 58).  On May 11, 2020, Defendants also filed the at-issue Motion to Request Court to Order Examination Concerning Competency of Plaintiff and related Motion to Seal, requesting that the Court enter an order for Plaintiff to undergo an Independent Medical Examination to determine whether he is competent to serve as witness in this lawsuit.  *See generally* Mot. to Request Court to Order Exam. (Dkt. 61); Mot. to Seal (Dkt. 62).

## DISCUSSION

### A.    Plaintiff's Motion for Leave to Amend Complaint (Dkt. 55)

Motions to amend a pleading filed after a Case Management Order deadline has expired are governed not by the liberal amendment language of Rule 15(a) of the Federal Rules of Civil Procedure, but instead by the more restrictive provisions of Rule 16(b) requiring a showing of

---

[4]  Additionally, the parties' intervening October 7, 2019 Status Report, December 20, 2019 Stipulation, and February 4, 2020 Status Report (Dkt. Nos. 43, 47, 50) never indicated an anticipated need to amend the pleadings, instead discussing the retrieval of Plaintiff's clothing, forensic testing protocols and chain-of-command issues, expert designations, and depositions.

**MEMORANDUM DECISION AND ORDER - 4**

"good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).  The focus of Rule 16(b)'s good cause standard is the diligence of the moving party.  *See id.* at 608.  A court should find good cause only if the moving party shows it "could not reasonably meet the established timeline in a scheduling order despite [its] diligence." *DIRECTV, Inc. v. Busdon*, 2005 WL 1364571, at *1 (D. Idaho 2005).  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  *Johnson*, 975 F.2d at 609.  If that party was not diligent, the inquiry should end.  *See id.*

Here, Plaintiff seeks leave to file a Second Amended Complaint pursuant to Rule 15(a) and (d).  However, the deadline for amendments was December 24, 2018.  Therefore, Rule 16(b) applies, requiring Plaintiff to show good cause to amend the Case Management Order pursuant to Rule 16 before he is permitted to file an amended pleading.  However, Plaintiff does not provide any reason, much less "good cause" reason, why his Second Amended Complaint could not have been filed closer-in-time to the deadline reflected in the Court's Scheduling Order.

Plaintiff filed his Motion for Leave to Amend Complaint over 15 months after the amendment deadline.  And, while it is true that Plaintiff originally represented himself and may not have understood the importance of pre-trial deadlines and the various legal standards involved in extending the same, Plaintiff still waited approximately 14 months to file his Motion for Leave to Amend Complaint *after* securing counsel.  But nowhere in the historical record is there any reference to a need to revisit the possibility of amending Plaintiff's Complaint – to be sure, any eventual forensic testing on Plaintiff's garments only serve to reinforce (at least in Plaintiff's and his counsel's mind) what Plaintiff had already alleged in his underlying Complaint.  This, by itself, is not good cause, warranting either an extension in the amendment deadline or an amended pleading itself.  Further, there is nothing in Plaintiff's Motion for Leave

**MEMORANDUM DECISION AND ORDER - 5**

to Amend Complaint justifying his delay in only now seeking leave to amend – either in relation to the original amendment deadline or, even, upon his counsel's subsequent Notice of Appearance.  Against such facts, the Court finds that Plaintiff has not shown good cause.

Even assuming good cause had been shown, allowing an amendment at this time would prejudice Defendants (including the additional Defendant that Plaintiff presumably seeks to add (*see infra*)), especially when considering that Defendants have already filed a Motion for Summary Judgment premised off of the pleading(s) that existed at the time of the October 9, 2020 dispositive motion deadline.

Separately, concerning Rule 15(d), the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).[5]  With this standard in mind, supplementation may be appropriate if it serves to "fill in the blanks" of an ambiguous complaint drafted by a non-attorney, or, relatedly, to convert a hand-written complaint into something more legible and clearer.  But that is not what is happening here (despite what Plaintiff contends (*see supra*)).  Indeed, the proposed Second Amended Complaint adds a new claim previously rejected within the Court's Initial Review Order (aggravated battery) and a new party (the Idaho State Police), alongside several instances of what the Court considers on the whole to be inconsequential and self-serving argument. This goes beyond a straightforward supplementation

---

[5]  The Ninth Circuit has not specifically addressed whether a party seeking to file a supplemental complaint under Rule 15(d) – as Plaintiff asserts here (in conjunction with Rule 15(a)) – must meet Rule 16(b)'s good cause standard to modify the scheduling order, where the motion to supplement is filed after the deadline for amending the complaint, and district courts within the Ninth Circuit that have addressed the question are split.  *See TaiMed Biologics, Inc. v. Numoda Corp.*, 2011 WL 1630041, at *2 n.2 (N.D. Cal. 2011) (citing *Global Bldg. Sys. v. Brandes*, 2008 WL 477876, at *2 (D. Ariz. 2008)).  What is clear, however, is that Rule 15(d) is discretionary with the Court.

**MEMORANDUM DECISION AND ORDER - 6**

and wanders instead into Rule 15(a) amendment territory which, as explained above, is governed by standards that, on this record, are not met. [6]

In sum, although supplemental pleading may be favored, it "cannot be used to introduce a separate, distinct, and new cause of action." *Planned Parenthood of S. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal citation and quotation omitted).  This case has been pending for nearly two years and is only now getting on track toward some semblance of a resolution.  If the Court permitted Plaintiff to supplement, it would potentially require yet another round of screening because of new claims with the further potential for amendment of any curable deficiencies, further delaying the progression of this matter.  It is within the Court's discretion under Rule 15(d) to deny Plaintiff leave to supplement because supplementation would not be in the interest of judicial efficiency.

These reasons combine to call for denial of Plaintiff's Motion for Leave to Amend Complaint.

## B.     Defendants' Motion to Dismiss for Failure to Post Bond (Dkt. 58)

Sixteen days after Plaintiff filed his Motion for Leave to Amend Complaint, Defendants "mo[ved] to dismiss all state claims based upon failure to file a statutory bond as required" under Idaho Code § 6-610.  Defs.' Mem. ISO Mot. to Dismiss, p. 1 (Dkt. 58-1).[7]  Idaho Code § 6-610

---

[6]   To the extent the proposed supplementation discusses the results of any forensic examination of Plaintiff's clothing for traces of pepper-spray, those allegations, again, have already been made and are understood to be a basis for Plaintiff's claim(s) against Defendants. Said another way, denying Plaintiff's supplementation efforts has no effect on the as-asserted claims already made in Plaintiff's Complaint and Amended Complaint.

[7]   It is not clear what, if any, state claims Plaintiff is making against Defendants in light of the Court's June 2018 Initial Review Order.  *See supra*; *see also* Defs.' Mem. ISO Mot. to Dismiss, p. 5 (Dkt. 58-1) ("In this case, *the only matters which was allowed to move forward after April 2, 2018 were Fourth Amendment excessive force and bodily integrity claims, there is no mention of viable state tort claims.  The April Order [(granting Plaintiff's Application for Leave to Proceed in forma pauperis)] is for prosecution of Rush's fourth amendment claims.  A

**MEMORANDUM DECISION AND ORDER - 7**

requires that "[b]efore any civil action may be filed against any law enforcement officer or service of civil process on any law enforcement officer," a plaintiff must post a bond prior to or simultaneously with the filing of the complaint.  I.C. § 6-610(2); *see also Allied Bail Bonds, Inc. v. Cty. of Kootenai*, 258 P.3d 340, 345 (Idaho 2011).  Although not a jurisdictional requirement, posting a bond is mandatory and a failure to post bond requires the trial court judge to dismiss the claims immediately (upon a defendant or respondent's objection to the failure to post such a bond).  *See* I.C. § 6-610(5).

Relatedly, a court may waive costs, fees, and security if (1) the party requesting a waiver files an affidavit stating that he is indigent and unable to pay the costs, fees, and security associated with his case, and (2) the court finds, after informal inquiry, that the party is indigent for the purposes of prepayment of fees, costs, or security.  *See* I.C. § 31-220(2)(a), (b).  This statute applies to bonds under Idaho Code § 6-610.  *See Thiemann v. Donahue*, 2014 WL 2948996, at *1 (D. Idaho 2014).

Here, Plaintiff was incarcerated at the time he filed his Complaint in February 2018.  Contemporaneously, Plaintiff also requested in forma pauperis status.  *See* IFP App. (Dkt. 2).  In April 2018, the Court granted Plaintiff's application for in forma pauperis and directed payments for the filing fee to be made from his prison account.  *See* 4/2/18 Order (Dkt. 10).  In this setting, the Court has effectively waived Idaho Code § 6-610's bond requirement, such that Plaintiff's

---

state bond must be filed as a prerequisite to bringing any state claims against individual law enforcement personnel.") (emphasis added).  Whether Defendants filed the Motion to Dismiss in light of Plaintiff's attempted amendments (where Plaintiff raised state claims) is unclear.  *See* Defs.' Reply ISO Mot. to Dismiss, p. 3 (Dkt. 67) ("The motion currently before this Court is to foreclose the Plaintiff *from grafting state claims on the original complaint* against state law enforcement officers. . . .  To foreclose Plaintiff's clear attempt to bootstrap ancillary state claims while ignoring state requirements, Defendants request a determination that any state claim (*whether newly raised or previously implied*) against the law enforcement officers should be dismissed for failure to file a bond as required by state law.") (emphasis added).  Regardless, to "cover the water," the Court addresses Defendants' arguments specific to Idaho Code § 6-610.

**MEMORANDUM DECISION AND ORDER - 8**

failure to post a bond does not mandate the dismissal of his state law claims against Defendants. *See Kangas v. Wright*, 2016 WL 6573943, at *6-7 (D. Idaho 2016) (citing *Pauls v. Green*, 816 F. Supp. 2d 961, 977 (D. Idaho 2011)).  Defendants' Motion to Dismiss for Failure to Post Bond is therefore denied.

**C.      Defendants' Motion to Request Court to Order Examination Concerning Competency of Plaintiff (Dkt. 61) and Motion to Seal (Dkt. 62)**

Defendant's Motion to Request Court to Order Examination Concerning Competency of Plaintiff ("Motion for Examination") seeks to require that Plaintiff "undergo an Independent Medical Examination (IME) to determine whether Plaintiff is competent to serve as a witness in this lawsuit which will be required."  Mot. for Exam., p. 1 (Dkt. 61).  In support of the Motion for Examination, Plaintiffs attach certain records from the Idaho State, Fourth Judicial District, criminal case number CR 01-17-40672, *State v. Clinton Brian Rush* (including an Order for Mental Evaluation, Orders of Commitment, and Order for Competency Evaluation), as well as a June 4, 2018 Psychological Evaluation conducted by Chad Sombke, Ph.D., PC.  *See generally* Kane Aff. (Dkt. 61-1 through 61-9); Mem. ISO Mot. for Exam. (Dkt. 63).

Plaintiff does not oppose the Motion for Examination.  Nonetheless, the Court will deny the Motion, without prejudice, for two reasons.  First, Defendants seek to dismiss Plaintiff's claims through an already-filed Motion for Summary Judgment (Dkt. 74).  Though the Court takes no position here on the merits of that motion, there is no need for an IME if it prevails – said another way, the Court and parties will "cross that bridge when we get to it" (and likely closer to trial via a motion in limine, if necessary).  Second, while Defendants properly reference FRE 601[8] in their moving paperwork, their supporting legal authority contemplates a criminal

---

[8]  FRE 601 reads:  "Every person is competent to be a witness unless these rules provide otherwise.  But in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 601.

**MEMORANDUM DECISION AND ORDER - 9**

case, not a civil case like here.  There are significant differences between civil and criminal cases as the level of proof, the nature of testimonial evidence, possible privileges that might apply, and so on.  For instance, even assuming both an IME and a subsequent request that the Court rule that Plaintiff is incompetent to testify, there are left the questions of whether (1) Plaintiff cannot be a competent witness *in his own case* (as compared to a third-party) and therefore cannot meet his burden of proof as a matter of law simply because he cannot testify (even though other proof could be adduced through the testimony of the law enforcement officers and physical evidence), or whether (2) the jury considers the results of Plaintiff's IME alongside his testimony at trial when confronting Plaintiff's burden of proof.

Therefore, given the uncertainty surrounding Defendants' Motion for Examination, it is denied, without prejudice.  Defendants' related Motion to Seal, however, is granted.

**D.    Defendants' Motion for Summary Judgment (Dkt. 74) and Motion to Seal (Dkt. 75)**

On October 9, 2020, Defendants filed their Motion for Summary Judgment and related Motion to Seal.  The corresponding briefing schedules were informally stayed following the October 14, 2020 status conference (no oppositions have been filed to date).  Despite the stay, on January 11, 2021, Defendants submitted a "Supplemental Memorandum in Support of Defendants' Motion for Summary Judgment" in light of Plaintiff's intervening deposition.  *See generally* Supp. Mem. ISO MSJ (Dkt. 81).

To account for these evolving circumstances and better situate the materials and arguments before the Court and all parties moving forward, Defendants' Motion for Summary Judgment and Motion to Seal will be denied, without prejudice to Defendants' ability to re-file a renewed Motion for Summary Judgment and Motion to Seal.  Any such renewed Motion for Summary Judgment shall (1) be filed on or before January 22, 2021, (2) not exceed 25 pages, and (3) incorporate *only those arguments* presented within Defendants' original filing on October

**MEMORANDUM DECISION AND ORDER - 10**

9, 2020 and Supplemental Memorandum on January 11, 2021.[9]  Plaintiff will likewise be

permitted to file a 25-page opposition to any renewed Motion for Summary Judgment, with

Local Civil Rule 7.1 dictating the parties' briefing schedule (for both the renewed Motion for

Summary Judgment and renewed Motion to Seal) unless otherwise ordered by the Court.

### <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that:

1.      Plaintiff's Motion for Leave to Amend Complaint (Dkt. 55) is DENIED;

2.      Defendants' Motion for Failure to Post State Bond (Dkt. 58) is DENIED;

3.      Defendants' Motion to Request Court to Order Examination Concerning

Competency of Plaintiff (Dkt. 61) is DENIED, WITHOUT PREJUDICE;

4.      Defendants' Motion to Seal (Dkt. 62) is GRANTED;

5.      Defendants' Motion for Summary Judgment (Dkt. 74) AND Motion to Seal (Dkt.

75) are DENIED, WITHOUT PREJUDICE to Defendants' ability to immediately renew their

Motion for Summary Judgment and Motion to Seal by January 22, 2021, consistent with the

terms outlined herein.  The currently-sealed materials (Dkt. 76) shall remain sealed until the

Court resolves the anticipated renewed Motion to Seal.

IT IS SO ORDERED          DATED: January 11, 2021

_____

Ronald E. Bush
Chief U.S. Magistrate Judge

---

[9]  Any such renewed Motion to Seal shall also be filed on or before January 22, 2021 and
may simply refer and incorporate therein the filings contained within Defendants' original
Motion to Seal (Dkt. 75).  The existing briefing (and attachments) submitted thus far need not be
re-filed.  The currently-sealed materials (Dkt. 76) shall remain sealed until the Court resolves the
anticipated renewed Motion to Seal.

**MEMORANDUM DECISION AND ORDER - 11**